26

United States District Court
Southern District of Texas
FILED

OCT 15 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GUILLERMINA MONTELONGO | § | |
| | § | |
| VS. | § | CIVIL ACTION NO.  B-02-176 |
| | § | (JURY REQUESTED) |
| TITAN TIRE CORPORATION OF | § | |
| TEXAS, and RUSSELL ASH | § | |

## DEFENDANTS' PRETRIAL ORDER

The parties to the above cause through their respective counsel of record enter into the following Joint Pretrial Order.

**I.**
## APPEARANCE OF COUNSEL

**Defendants:**

Eileen M. Leeds
State Bar No. 00791093
Federal No. 16799

Melanie A. Moore
State Bar No. 24014281
Federal No. 32748

WILLETTE & GUERRA, L.L.P.
3505 Boca Chica Blvd., Suite 460
Brownsville, Texas 78520
Telephone (956) 541-1846
Facsimile (956) 541-1893

**Plaintiff:**

Mr. Michael R. Cowen,
State Bar No.00795306
Federal No.:  19967

765 E. 7th Street, Ste. A
Brownsville, Texas 78520
Telephone (956) 541-4981
Facsimile (956) 504-3674

Conrad Bodden
State Bar No.: 00796220
Federal ID:    21003

LAW OFFICES OF MICHAEL R. COWEN, P.C.
520 East Levee Street
Brownsville, Texas 78520
(956) 541-4981
(956) 504-3674

David Sanchez
State Bar No.: 24013451
Federal No.    25271
LAW OFFICES OF MICHAEL R. COWEN, P.C.
520 East Levee Street
Brownsville, Texas 78520
(956) 541-4981
(956) 504-3674

Mr. Carlos Cisneros
State Bar No.: 793508
Federal No.:    21865

CISNEROS & MATTINGLY, P.C.
845 East Harrison Street
Brownsville, Texas 78520
(956) 504-2260
(956) 504-5988

Mr. Chuck Mattingly
State Bar No.: 00791202
Federal No.:    20638

CISNEROS & MATTINGLY, P.C.
845 East Harrison Street
Brownsville, Texas 78520
(956) 504-2260
(956) 504-5988

## II.
## STATEMENT OF THE CASE

**1.    Plaintiff's Statement**

Guillermina Montelongo ("Plaintiff") began working for Defendant Titan Tire Corporation of Texas ("Titan") on or about November 30, 1998. Defendant Russell Ash was Plaintiff's supervisor. Mr.Ash made repeated romantic advances toward Plaintiff. Ms. Montelongo declined each of Ash's advances. The very first time Ash asked Plaintiff out, Ms. Montelongo declined and said she did not drink and that she was married. Because of Ash's unwelcome advances, Plaintiff sought medical attention at Valley Doctor's Clinic in or around October 2000. A doctor wrote a note to Titan saying that Plaintiff needed time off due to stress and symptoms of severe depression. When Ash discovered his attempts at wooing the Plaintiff had failed, Ash retaliated by demoting Plaintiff. After demoting her, Ash continued to retaliate against the Plaintiff by harassing her. Once, in front of other employees, Ash said he "needed to fire [Plaintiff] or find a way to fire [Plaintiff] because [she] was a fucking bitch." In addition, Ash constantly yelled at Plaintiff. Defendant Ash's conduct was sufficiently pervasive to alter the terms and conditions of Plaintiff's employment and created a working environment that was intimidating, insulting and abusive to female employees. As a result of Ash's sexual harassment, Plaintiff was obliged to resign her employment on or around August 10, 2001 and was thereby constructively discharged.

**2.    Defendant's Statement**

This is a sexual harassment lawsuit filed by Plaintiff against her former employer Titan Tires of Texas and Russell Ash, former operations manager of Titan Tires of Texas. Plaintiff alleges that Russell Ash asked her out to have a beer three times, and she found this conduct offensive and unwelcome. Defendants deny that Russell Ash ever asked her out. Defendant further contend that, even if Russell Ash did ask her out, this conduct does not rise to the level of sexual harassment necessary for Plaintiff to establish a prima facie case of sexual harassment. Plaintiff alleges that this conduct created a hostile environment, and this hostile environment caused her to resign her employment at Titan Tires of Texas. Defendants contend that Russell Ash's management style was aggressive; however, it was aggressive toward all employee, both male and female, and therefore not discriminatory against either gender. Defendant can further establish its affirmative defense by showing that it exercised reasonable care to prevent any sexually harassing behavior and the Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by Titan Tires of Texas. Defendants further contend that Russell Ash is not a proper party, because pursuant to both Title VII and the Texas Commission on Human Rights Act, only employers are proper defendants. Additionally, Defendants contend that Plaintiff was not constructively discharged.

## III.
## JURISDICTION

This is a civil action seeking redress for violation of rights guaranteed to the Plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-5, Section 1981a. The Court has supplemental jurisdiction of state claims pursuant to 28 U.S.C. §1334.

## IV.
## MOTIONS

The following motions are pending at the time of the pretrial conference:

1.    Defendants' Motion for Summary Judgment.

## V.
## CONTENTIONS OF THE PARTIES

**1.    Contention of the Plaintiff**

1)    Title VII violation: Defendants discriminated against plaintiff by engaging in, tolerating or failing to prevent the sexual harassment of plaintiff by Defendant, Russell Ash. Plaintiff's rights were further violated when defendants constructively terminated plaintiff. Defendant Russell Ash made unsolicited advances at plaintiff in asking her out on several dates. After the initial request, plaintiff responded informing Defendant Ash that she was happily married and wasn't interested in "having a drink" or anything else with Defendant Ash. As Plaintiff continued to reject Ash's advances, Ash began to make plaintiff's life at work more and more miserable. Plaintiff even sought medical attention for her depression resulting from Defendant Ash's treatment.  Plaintiff was demoted in rank by Defendant Ash. Defendant acted maliciously and with reckless indifference to Plaintiff's rights. Plaintiff contends that she has a viable quid pro quo action in that she suffered tangible benefits by being demoted. In the alternative, there is a viable hostile environment cause of action because the following elements were all met; (1) a supervisor (2) because of sex (3) subjects an employee to (4) unwelcome conduct (5) that is severe and pervasive, (6) creates an abusive work environment, and (7) affects a term, condition, or privilege of employment.

2.)    Intentional Infliction of emotional distress: Defendant Ash's conduct exceeded the bounds of decency tolerated in the State of Texas. As a result of the rejection that Ash received from Plaintiff, he used his position of authority to make working conditions so intolerable that Plaintiff was left with no choice but to resign in order to preserve her mental health. The harassment was either intended to cause severe emotional distress or was perpetrated with reckless indifference to the likelihood that it would cause severe emotional distress. Defendant's are therefore liable to Plaintiff for all damages proximately resulting from the distress suffered as a result of Defendant Ash's conduct.

3.)    Texas Labor Code Violation: because the Texas Labor Code mirrors Title VII, the contentions are the same as laid out in (1) above.

4.)    Defendant Titan is vicariously liable for the misfeasant and malfeasant conduct of its employee and agent Russell Ash.

**2.    Contention of the Defendants**

Defendants contend that they did not discriminate against the Plaintiff because of her sex. Defendants contend that Russell Ash did not ask Plaintiff out to have a beer at any time. Defendants contend that Plaintiff did not suffer a tangible employment action. Defendants contend that Plaintiff resigned and was not constructively discharged. Defendants further contend that even if Plaintiff's

allegations that Russell Ash asked her out for a beer are taken as true, this conduct does not rise to the level of sexual harassment as it is not severe, pervasive, physically threatening or humiliating. Additionally, Defendants cannot be held liable, because both female and male employees were treated the same by Russell Ash.   Further, that Titan Tires of Texas cannot be held liable for Plaintiff's allegations, because it can establish an affirmative defense. First, Titan Tires exercised reasonable care to prevent any sexually harassing behavior. Second, the Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by Titan Tires. Defendants also contend that Plaintiff was not constructively discharged, and did not suffer intentional infliction of emotional distress.

## VI.
## ADMISSIONS OF FACT

1) Guillermina Montelongo is a resident of Cameron County, Texas.
2) Russell Ash is a resident of Cameron County, Texas.
3) Titan Tires of Texas has its place of business in Cameron County, Texas.
4) At the time giving rise to this cause of action, Titan Tires of Texas employed at least fifteen employees.
5) The alleged actions giving rise to this cause of action occurred in Cameron County, Texas.
6) Plaintiff was employed as a tire builder by Titan Tires of Texas from November 30, 1998 until August 10, 2001.
7) Plaintiff was promoted to tire builder supervisor on March 7, 2000.
8) In July 2000, Defendant Russell Ash became the plant manager for Titan Tires of Texas.
9) Defendant Russell Ash was an aggressive plant manager, and was mean and aggressive toward all employees.
10) Throughout her employment as supervisor, Plaintiff frequently did not meet the daily production goals established by management.
11) Because Plaintiff did not meet her production goals, Guadalupe Salinas was assigned as a co-supervisor to assist in meeting the production goals.
12) Plaintiff and Guadalupe Salinas had problems when they were working as co-supervisors.
13) On August 9, 2001, Defendant Russell Ash reprimanded Plaintiff for not meeting production goals and not timing the tire builders as directed by Russell Ash.
14) On August 10, 2001, Plaintiff resigned from her employment from Titan Tires of Texas.

## VII.
## CONTESTED ISSUES OF FACT

1) Whether Defendant Russell Ash made unwelcome advances toward Plaintiff by asking Plaintiff out to have a beer on three separate occasions.
2) Whether Defendant Russell Ash asked Guillermina Montelongo our after she declined and told him she was married.
2) Whether Plaintiff was constructively discharged.
3) Defendant Russell Ash treated Plaintiff differently that other employees at Titan Tires of Texas.
4) Whether Defendant Russell Ash referred to female employees in operations as "fucking bitches."
5) Whether Defendant Russell Ash told Steve Harrison that he needed to get rid of Guillermina Montelongo.
6) Whether Russell Ash demoted Montelongo because she would not accept his advances.
7) Whether Russell Ash tried to entice Montelongo by telling her that when the company moved him to different places, he would find a wife or girlfriend and

8)  build her a home and let her keep it when he moved to the next assignment.
    Whether Guillermina Montelongo suffered mental depression and anguish as a result of Ash's actions.

9)  Whether such actions by Russell Ash along with repeated foul and vulgar language toward Plaintiff were what caused her to terminate her employment for her own mental and emotional well being.

## VIII.
## AGREED PROPOSITIONS OF LAW

The Plaintiff has brought claims pursuant to Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act. (See Plaintiff's First Amended Complaint attached hereto as Exhibit "A"). The Texas Commission on Human Rights Act is intended to carry out the policies of Title VII of the Civil Rights Act of 1964. Tex. Labor Code Ann. Sec. 21.001 (1). Texas courts may consider analogous federal case law, focusing on Title VII, in the interpretation and application of the Texas Commission on Human Rights Act, since the state statute tracks its federal counterpart. *Graves v. Komet*, 982 S.W.2d 551, 554 (Tex.App.–San Antonio 1998, no writ); *Trico Technologies Corp. v. Rodriguez*, 907 S.W.2d 650, 652-53 (Tex.App.–Corpus Chrisit 1995, no writ); *Benavides v. Moore*, 848 S.W.2d 190, 193 (Tex.App.–Corpus Christi 1995, writ denied); *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex.1996). Therefore, Plaintiff's federal and state claims are analyzed under the same federal law.

### Standard for determining employer liability

Plaintiff claims that she was subjected to sexual harassment by her supervisor at Titan Tires. In *Casiano v. AT&T Corp.*, the Fifth Circuit adopted what is known as the *Ellerth/Faragher* road map, promulgated by the United States Supreme Court, when deciding whether or not an employer could be held liable for its employee's sexual harassment where the offending employee is the plaintiff's supervisor. *Casiano v. AT&T Corp.*, 213 F.3d 278 (5th Cir.2000). Applying this road map, the Fifth Circuit set forth the following steps:

First, courts are required to determine whether the plaintiff has suffered a tangible employment action. *Id.* at 283. If the plaintiff has suffered a tangible employment action, the lawsuit is classified as a quid pro quo case. *Id.* If the plaintiff has not suffered a tangible employment action, the lawsuit is classified as a hostile environment case. *Id.*

Once the case has been classified as a hostile environment case, the next inquiry is whether the supervisor's actions were severe and pervasive. If the supervisors actions were not severe and pervasive, then there is no Title VII liability. *Id.* If the supervisors actions were severe and pervasive, the employer will have to establish the *Ellerth/Faragher* affirmative defense in order not to be held liable for its supervisor's actions.

The *Ellerth/Faragher* affirmative defense involves two steps. First, the employer must establish that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior. Second, the employer must establish that the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or otherwise failed to avoid harm. *Id.*

### Constructive Discharge

Plaintiff must prove by a preponderance of the evidence that Defendants, instead of directly discharging Plaintiff, intentionally created an intolerable work atmosphere that forced Plaintiff to quit involuntarily. Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in Plaintiff's shoes would have felt compelled to resign. The conduct must express extreme insensitivity and be so egregious in nature as to alter the conditions of employment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65

(1986); *DeAngelis v. El Paso Municipal Police Officers Association*, 51 F.3d 591, 593 (5ᵗʰ Cir. 1995).

**Intentional Infliction of Emotional Distress**

  The Plaintiff has also alleged a cause of action for intentional infliction of emotional distress as against Russell Ash. To recover damages for intentional infliction of emotional distress the Plaintiff must prove the following: "(1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *GTE Southwest, Inc., v. Bruce*, 998 S.W.2d 605 (Tex.1998).

## IX.
## CONTESTED PROPOSITIONS OF LAW

**Russell Ash is not a proper Defendant**

  Plaintiff has brought suit against Russell Ash pursuant to the Civil Rights Act of 1964, Title VII and the Texas Commission on Human Rights Act. Russell Ash was a supervisor at Titan Tires of Texas. Both Title VII and the Texas Commission on Human Rights Act require that suits be brought against employers, not individual supervisors. Individual employees, supervisors, or managers cannot be held liable. *Grant v. Lone Star Co.*, 21 F.3d 649 (5ᵗʰ Cir. 1994), *cert denied*, 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994);*DeMoranville v. Specialty Retailers, Inc.*, 909 S.W.2d 90 (Tex.App.–Houston [14ᵗʰ Dist.] 1995), rev'd on other grounds, 933 S.w.2c 490 (Tex. 1996); *Tex. Labor Code Ann. Sec.* 21.051. Since Russell Ash was not an employer, he cannot be held liable under Title VII or the Texas Commission on Human Rights Acts.

**Quid Pro Quo**

  Whether the quid pro quo framework of Title VII and the Texas Labor Code are applicable to the present case.

## X.
## EXHIBITS

Plaintiff's Exhibit List is attached hereto as Attachment "A".
Defendants' Exhibit List is attached hereto as Attachment "E".

## XI.
## WITNESSES

Plaintiff's Witness List is attached hereto as Attachment "B".
Defendants' Witness List is attached hereto as Attachment "F".

## XII.
## SETTLEMENT

The parties have not mediated the case. Defendants believe mediation would be fruitful.

## XIII.
## TRIAL

Both parties estimate that trial would take three (3) days.

# XIV.
## ATTACHMENTS

Attachment A:       Plaintiffs's Exhibit List
Attachment B:       Plaintiff's Witness List
Attachment C:       Plaintiff's Proposed Jury Instructions
Attachment D:       Plaintiff's Proposed Voir Dire
Attachment E:       Defendants' Exhibit List
Attachment F:       Defendants' Witness List
Attachment G:       Defendants' Proposed Jury Instructions
Attachment H:       Defendants' Proposed Voir Dire


Date: _____

_____
UNITED STATED DISTRICT JUDGE

APPROVED:

_____                Date: _10- 15 2003_
Michael Cowen
Attorney In Charge for Plaintiff

_____                Date: _10-15- 2003_
Eileen M. Leeds
Attorney In Charge for Defendants

| UNITED STATES DISTRICT COURT ☆ | SOUTHERN DISTRICT CF TEXAS |
|---|---|
| GUILLERMINA MONTELONGO<br>*versus* | CASE NO.    B-02-176 |
| TITAN TIRE CORPORATION OF<br>TEXAS, and RUSSELL ASH | **DEFENDANTS' EXHIBIT "E"** |
| Judge Hilda G. Tagle | Case Manager: Estella Cavazos<br>Court Reporter: Breck Record |
| List of Defendants | Proceeding Date:    November 3, 2003 |

A.  Plaintiff's daily production records.
B.  Letter from Johnny Garcia to the Texas Workforce Commission attached to Johnny
    Garcia's deposition transcript as an exhibit.
C.  Titan Tire Employee Handbook.
D.  Document signed by Plaintiff indicating she received the Titan Tire Employee
    Handbook.
E.  Titan Tire sexual harassment training sign-in sheet.
F.  Plaintiff's employment records indicating her job position and rate of pay.
G.  Audio tapes from Texas Workforce Commission regarding Plaintiff's unemployment
    benefits hearing.
H.  Plaintiff's written discovery responses.
I.  Plaintiff's letter of resignation.
J.  Plaintiff's personnel file, EEOC file, and Texas Workforce Commission file.
K.  Plaintiff's medical records.

# PLAINTIFF'S WITNESS LIST

Guillermina "Minnie" Montelongo
835 San Pedro Lane
Brownsville, Texas 78521
Plaintiff.

Benigno Rico
835 San Pedro Lane
Brownsville, Texas 78521
*Husband of Plaintiff, also has knowledge relevant facts of this case.*

Titan Tire of Texas Corporation
c/o Ms. Eileen Leeds
WILLETTE & GUERRA, L.L.P.
3505 Boca Chica Blvd., Suite 460
Brownsville, Texas 78521
*Defendant.*

Russell Ash
c/o Ms. Eileen Leeds
WILLETTE & GUERRA, L.L.P.
3505 Boca Chica Blvd., Suite 460
Brownsville, Texas 78521
*Defendant.*

Michelle Megerle
U.S. Equal Employment Opportunity Commission
San Antonio District Office
5410 Fredericksburg Road, Suite 200
San Antonio, Texas 78229-3555
*Investigator for U.S. Equal Employment Opportunity Commission,* currently
*investigating Minnie Montelongo's claims against Titan Tire Corporation of*
*Texas and Russell Ash.*

Mr. Joe Kolniak
Titan Tire of Texas Corporation
6700 Paredes Line Road
Brownsville, Texas 78521
*Director of Human Resources of Titan Tire of Texas Corporation, also has*
*knowledge of relevant facts in this case.*

Ms. Julie Hutton
P.O. Box 1125 ½ Highway 100
Los Frensos, Texas 78566
*Eyewitness to harassment and has relevant knowledge of this case*

Ms. Griselda Mancillas
1929 Monaco Drive
Brownsville, Texas 78521
*Has relevant knowledge of this case*

Martha Sanchez
6700 Paredes Line Road
Brownsville, Texas 78521
(956) 986-7079
*Has relevant knowledge of this case.*

Steve Harrison
3840 N. Expressway 83
Brownsville, Texas 78521
*Eyewitness to harassment and has relevant knowledge of this case.*

Rose Guajardo
6700 Paredes Line Road
Brownsville, Texas 78521
(956) 986-7079
*Has relevant knowledge of this case.*

Mr. Johnny Garcia
Former Titan Tire of Texas Employee
Brownsville, Texas 78521
*Mr. Garcia testified at Plaintiff's Texas Workforce Commission Hearing*

**Sandra Montalvo**
**234 El Valle Drive**
**Brownsville, Texas 78520**
**(956) 831-0986**
*Will testify about Mr. Russell Ash sexual advances towards her.*


**L.R. Pelly, M.D.**
**585 West Jefferson Street**
**Brownsville, Texas 78520**
**(956) 544-0755**
*Will testify about Guillermina Montelongo's medical condition.*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GUILLERMINA MONTELONGO | § | |
| | § | |
| VS. | § | CIVIL ACTION NO.    B-02-176 |
| | § | (JURY REQUESTED) |
| TITAN TIRE CORPORATION OF | § | |
| TEXAS, and RUSSELL ASH | § | |

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS AND QUESTIONS

LADIES AND GENTLEMEN OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose and I instructed you that you may consider some documents as evidence against one party but not against another. You may consider such evidence only for the specific limited purposes for which it was admitted. Specific limiting instructions may be repeated as appropriate.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GUILLERMINA MONTELONGO | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-02-176 |
| | § | (JURY REQUESTED) |
| TITAN TIRE CORPORATION OF | § | |
| TEXAS, and RUSSELL ASH | § | |

## PLAINTIFF'S PROPOSED VOIR DIRE QUESTIONS

Plaintiff, Guillermina Montelongo, submits the following proposed voir dire questions:

1.   This is a suit for damages. The general facts alleged by the parties in this case are Guillermina Montelongo began working for Defendant Titan Tire Corporation of Texas on or about November 30, 1998. Defendant Russell Ash was Plaintiff's supervisor. Mr. Ash made repeated romantic advances toward Plaintiff. Ms. Montelongo declined each of Ash's advances. The very first time Mr. Ash asked Plaintiff out, Plaintiff declined and said she did not drink and that she was married. Because of Mr. Ash's unwelcome advances, Ms. Montelongo sought medical attention at Valley Doctor's Clinic in or around October 2000. A doctor wrote a note to Titan saying that Plaintiff needed time off due to stress and symptoms of severe depression. When Mr. Ash discovered his attempts at wooing the Plaintiff had failed, Ash retaliated by demoting Ms. Montelongo. After demoting her, Mr. Ash continued to retaliate against theMs. Montelongo by harassing her. Once, in front of other employees, Mr. Ash said he "needed to fire Ms. Montelongo or find a way to fire her In addition, Mr. Ash constantly yelled at Plaintiff.Defendant Ash's conduct was sufficiently pervasive to alter the terms and conditions of Ms. Montelongo's employment and created a working environment that was intimidating, insulting and abusive to female employees.As a result of Mr. Ash's sexual harassment, Ms. Montelongo was obliged to resign her employment on or around August 10, 2001 and was thereby constructively discharged.

1.   Do any of you know anything about the facts of this case through personal knowledge or the media?

2.    Do you understand that this is a civil case? This means that it is a civil dispute rather than a criminal prosecution:

3.   Do you understand that the role of the jury is to be the "judge" of the disputed facts in the case? This means that each juror must listen to the evidence admitted in court and decide the relative value of that evidence to resolve questions that will be pre- sented to the jury at the conclusion of the evidence.

4.   Do you understand that the burden of proof in a civil case is different from that in a criminal case? This means that the party that must prove something to you as jurors must do so bya preponderance of the evidence/clear and convincing evidence, not beyond a reasonable doubt.

5.  Do you understand that the parties are entitled to prove facts by circumstantial evidence? This means, for example, that testimony by a witness who observed a wet umbrella at the front door of a home may be sufficient to prove that it was raining outside even though there is no testimony that anyone looked or went outside to see whether it was raining.

6.  Litigants are entitled to have their case heard by a jury that is fair and impartial. Do you understand that being a fair and impartial juror means that a person does not have special feelings or special knowledge about an issue in the case or about the case itself that prevents that person from treating both sides of the dispute the same before hearing any evidence? For example, someone who lost a child in an accident involving a drunk driver might have difficulty being a juror in an automobiie collision case in which one party alleged the other was intoxicated.

7.  Do you understand that the jury-selection process is the sole opportunity that the litigants will have to learn if you have had experiences or have feelings or knowledge that may influence how you view the evidence in this case?

8.  Are you acquainted with the plaintiff in this case?

9.  Are you acquainted with the defendant in this case?

10. Do you recognize any of the attorneys who are here?

11. Have you, anyone close to you, or any family member ever been represented by any of the attorneys representing the parties in this suit? They are David Sanchez with the Law Offices of Michael R. Cowen, Conrad Bodden with the Law Offices Michael R. Cowen, Michael R. Cowen with the Law Offices of Michael R. Cowen, Carlos Cisneros with the Law Office of Cisneros and Mattingly, Charles Mattingly with the Law Offices of Cisneros and Mattingly, Eileen Leeds with the Law of Willette and Guerra and Melenie Moore with the Law Offices of Willette and Guerra.

12. The following are potential witnesses in this case. Guillermina Montelongo, Benigno Rico, Russell Ash, Michelle Megerle with the U.S. Employment Opportunity Commission, Joe Kolniak formerly employed by Ttitan Tires of Texas, Julie Hutton formerly employed by Titan Tire of Texas, Griselda Mancillas formerly employed by Titan Tire of Texas, Martha Sanchez currently employed by Titan Tire of Texas, Steve Harrison formerly employed by Titan Tire of Texas, Rose Guajardo formerly employed by Titan Tire of Texas, Johnny Garcia formerly employed by Texas Tire of Texas, Sandra Montalvo formerly employed by Titan Tire of Texas and Lorenzo Pelly. Do you know, or do you think you know, any of these people?

13. Do you know anyone else on the jury panel?

14. Have you, anyone close to you, or any member of your family (including your spouse, children, stepchildren, parents, brothers, sisters, children-in-law, brothers-in; law, sisters-in-law, or parents-in-law) ever worked for or been employed by any of the following companies: Titan Tire of Texas, Titan Tire Corporation, Titan International, Law Offices of Willette and Guerra, Law Offices of Cisneros & Mattingly or Law Offices of Michael R. Cowen.

15. Have you, anyone close to you, or any member of your family ever owned stock in the following companies: Titan Tire of Texas, Titan Tire Corporation, Titan International?

16. Have you, a relative, or anyone close to you ever studied law?

17. Are any of your spouses lawyers or have they studied law?

18. Have you, a relative, or anyone close to you ever been employed as a claims investigator or adjuster of claims or claims handler?

19. Have you, a relative, or anyone close to you ever been employed as a police officer, sheriff, constable, or other law enforcement officer?

20. Have you ever served in the armed forces?

21. Have you ever been a witness at trial, civil or criminal? I

22. Have you ever been a juror in a trial, civil or criminal?

23. If yes, were you the presiding juror?

24. If you were a juror in a civil trial, did your jury reach a verdict?

25. Has any close friend or relative ever been involved as a plaintiff, defendant, or witness in a civil case, or ever attended court for any reason?

26. If yes, is that civil case still pending?

27. Based upon what you have heard about the facts of this case, was the civil action in which your friend or relative was involved similar in any way to this case?

28. Was there anything about the civil case in which your friend or relative was involved that you believe could have an impact on your ability to be a fair and impartial juror of the facts in this case?

29. Have any of you ever been a defendant in a suit brought for damages?

30. If yes, is that case still pending?

31. Based upon what you have heard about the facts of this case, is the civil action in which you are or were a defendant similar in any way to this case?

32. Is there anything aobut the civil case in which you are or were a defendant that you believe could have an impact on your ability to be a fair and impartial juror of the facts in this case?

33.    Have any of you been a plaintiff in a suit?

34.    If yes, is that case still pending?

35.    Based upon what you have heard about the facts of this case, is the civil action in which you are or were a plaintiff similar in any way to this case?

36.    Is there anything about the civil case in which you are or were a plaintiff that you believe could have an impact on your ability to be a fair and impartial juror of the facts in this case?

37.    Have you read any advertisement, articles, or editorials concerning lawsuits or jury awards?

38.    Are you a member of any organization which pertains to the justice system or reform or modification of the justice system?

39.    This case is expected to last 2 to 3 days. Do you have any confirmed vacation plans or other family matters that would conflict with jury service?

40.    Do you have any physical disability or condition that would interfere with your serving as a juror in this case?

41.    Would you be paid by your employer during jury service?

42.    Is there anything about what you have heard during this jury-selection process that concerns you about your ability to be a fair and impartial juror of the particular facts of this case?

43.    Is there any matter that anyone would like to discuss privately that bears on their ability to serve as a juror in this case?

Respectfully submitted,

MICHAEL R. COWEN , P.C.
520 E. Levee Streeet
Brownsville, Texas 78520
(956) 541-4981
(956) 504-3674 (FAX)

Michael R Cowen
State Bar No.   00795306
Federal ID No. 19967
Conrad Bodden
State Bar No. 00796220
Federal ID No. 21003
David Sanchez
State Bar No.: 24013451
Federal ID No. 25271

ATTORNEYS FOR PLAINTIFF

In determining the weight to give the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

The fact that a witness has previously been convicted of a felony, or a crime involving dishonesty or false statement, is also a factor you may consider in weighing the credibility of that witness. Such a conviction does not necessarily destroy the witness' credibility, but it is one of the circumstances you may take into account in determining the weight to give to his testimony.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness. There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence-the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply that the requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field who is called an expert witness is permitted to state his opinion on those instances of technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ

from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.

Notes are not entitled to any greater weight than the the recollection or impression of each juror about the testimony. When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question. After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

## Special Instructions

1. Your verdict must be for plaintiff Guillermina Montelongo and against defendants Russell Ash and Titan Tire Corporation of Texas if all the following elements have been proved by the preponderance of the evidence:

Sexual harassment occurred if:

      1. Guillermina Montelongo was subjected to unwelcome sexual advances or requests;

      2. refusal to submit to the unwelcome sexual advances or requests resulted in a demotion, unprofessional treatment, and ultimately constructive termination; and

      3. the conduct was committed by an employee who had authority over hiring, advancement, dismissals, discipline, or other emlpoyment decisions affecting Guillermina Montelongo.

OR

Sexual harassment occurred if:

      1. Guillermina Montelongo was subjected to sexual advances, requests for sexual favors, and/or other conduct of sexual nature that was unwelcome and undesirable or offensive to Guillermina Montelongo;

      2. the harassment complained of altered a term, condition, or privilege of employment; and

      3. the conduct was committed by a supervisor who had authority over hiring, advancement, dismissals, discipline, or other emlpoyment decisions affecting Guillermina Montelongo

      Harassment alters a term, condition, or privilege of employment when a reasonable person would find that the harassment created an abusive working environment. In determining whether an abusive working environment existed, consider the following: the frequency of the conduct; its severity; whether it was physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

If the above elements have not been proved by the preponderance of the evidence, your verdict must be for defendant and you need not proceed further in considering this claim.

## QUESTIONS

## QUESTION 1.

Was Guillermina Montelongo subjected to sexual harassment by Russell Ash?

Answer: _____

## QUESTION 2.

If your answer to Question 1 is "Yes," then answer the following question. Otherwise, do not answer the following question.

Is Titan Tire Corporation of Texas legally excused from responsibility for the conduct of Russell Ash found in Question 1.?

      Titan Tire Corporation of Texas is legally excused if:

      1.    Titan Tire exercised reasonable care to prevent and correct promptly any sexual harassment behavior; and

      2.    Guillermina Montelongo failed to take advantage of any preventative or corrective opportunities by her employer or to avoid harm otherwise.

      Answer "yes" or "no"
      Answer: _____

## QUESTION 3.

If you find in favor of plaintiff under Question 1, then you must award plaintiff such sum as you find by the preponderance of the evidence will fairly and justly compensate plaintiff for any damages you find plaintiff sustained as a direct result of the sexual harassment that she received from Russell Ash.

      What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Guillermina Montelongo for her damages with respect to defendant Russell Ash?

      Answer: _____

## QUESTION 4.

If you find in favor of plaintiff under Question 2, then you must award plaintiff such sum as you find by the preponderance of the evidence will fairly and justly compensate plaintiff for any damages you find plaintiff sustained as a direct result of Titan Tire refusing to deal with the complaint submitted by Guillermina Montelongo to Steve Harrison.

      What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Guillermina Montelongo for her damages with respect to defendant Titan Tire Corporation of Texas?

Answer: _____

## QUESTION 5.

Did Russell Ash intentionally inflict severe emotional distress on Guillermina Montelongo?

Intentional infliction of emotional distress occurs when the defendant acts intentionally or recklessly with extreme and outrageous conduct to cause the plaintiff emotional distress and the emotional distress suffered by the plaintiff was severe.

"Extreme and outrageous conduct" occurs only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Answer "Yes" or "No."

Answer:

If you answered "Yes" to the question 5 above, what sum of money, if any, if paid now in cash, would fairly and reasonably compensate Guillermina Montelongo for her damages?
Answer in dollars and cents for damages, that–

were sustained in the past;                                        Answer:_____
in reasonable probability will be sustained in the future.    Answer:_____

## CERTIFICATE OF SERVICE

On this the ___/5___ day of October, 2003 a true and correct copy of the above and foregoing was sent to opposing counsel in the manner indicated below:

### Certified Registered U.S. Mail

Ms. Eileen Leeds
Ms. Amy L. Gonzalez
WILLETTE & GUERRA, L.L.P.
International Plaza, Suite 4602
3505 Boca Chica Blvd.
Brownsville, Tx. 78521

DAVID SANCHEZ

| UNITED STATES DISTRICT COURT | ☆ | SOUTHERN DISTRICT OF TEXAS |
|---|---|---|
| GUILLERMINA MONTELONGO versus | CASE NO.   B-02-176 | |
| TITAN TIRE CORPORATION OF TEXAS, and RUSSELL ASH | **Witness List EXHIBIT "F"** | |
| Judge Hilda G. Tagle | Case Manager: Estella Cavazos Court Reporter: Breck Record | |
| List of Defendants | Proceeding Date:  November 3, 2003 | |

1.  Guillermina Montelongo – Plaintiff, will testify as to her employment with Titan Tires and the alleged sexual harassment by Russell Ash, the alleged hostile environment created by Russell Ash, and the circumstances surrounding her resignation.

2.  Russell Ash – Defendant, will testify as to Plaintiff's employment with Titan Tires, her work performance, the allegations made against him by Plaintiff, the reprimand given to Plaintiff the day before she resigned, the decision to assign Guadalupe Salinas to assist Plaintiff meet her production goals, and his management style.

3.  Joe Kolniak – Human Resources Director for Titan Tires of Texas, will testify as to the problems between Plaintiff and Guadalupe Salinas when Mr. Salinas was assigned to assist Plaintiff meet her production goals, Russell's management style, and the fact that Plaintiff or any other employee of Titan Tires of Texas, including Steve Harrison, never complained to him about any sexual harassment or inappropriate conduct by Russell Ash.

4.  Rose Guajardo – former secretary at Titan Tires of Texas, will testify as to Russell Ash's management style and the daily pre-shift meetings Russell Ash had wherein Plaintiff was present.

5.  Steve Harrison – former employee of Titan Tires of Texas, will testify as to what Plaintiff told him regarding Russell Ash's conduct toward her, Russell Ash's management style, and confirm that he too as filed a lawsuit against Titan Tires of Texas based on Russell Ash's conduct toward him.

6.  Johnny Garcia – former employee of Titan Tires of Texas, will testify as to what Plaintiff told him regarding Russell Ash's conduct toward her, Russell Ash's management style, and confirm that he too as filed a lawsuit against Titan Tires of Texas and Russell Ash.

7.  Luicio Rangel – former employee of Titan Tires of Texas, will testify as to what Plaintiff told him regarding Russell Ash's conduct toward her and Russell Ash's management style.

8.  Julia Hutton – former employee of Titan Tires of Texas, will testify as to what Plaintiff told her regarding Russell Ash's conduct toward her and Russell Ash's management style.

9.  Martha Sanchez – former employee of Titan Tires of Texas, will testify as to her knowledge of the allegations made by Plaintiff regarding Russell Ash.

10.  Benigno Rico – Plaintiff's husband and former employee of Titan Tires of Texas, will testify as to his knowledge of Plaintiff's allegations, his own lawsuit against Titan Tires of Texas, and the leave Titan Tires of Texas gave Plaintiff when he was injured.

11.  Guadalupe Salinas – former employee of Titan Tires, will testify as to his working relationship with Plaintiff when promoted to co-supervisor.

12.  David Fines – *employee of* Titan Tires *of* Texas who was present at certain pre-shift production meetings.

13.  Jerry Shanholtzer – employee of Titan Tires of Texas who was present at certain daily pre-shift production meetings.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

GUILLERMINA MONTELONGO          §
                                §
VS.                             §        CIVIL ACTION NO.    B-02-176
                                §        (JURY REQUESTED)
TITAN TIRE CORPORATION OF       §
TEXAS, and RUSSELL ASH          §

---

**DEFENDANT'S PROPOSED JURY INSTRUCTIONS AND QUESTIONS**

---

**LADIES AND GENTLEMEN OF THE JURY:**

      This is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law, you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all the instructions which have previously been given you. I shall now give you additional instructions which you should carefully and strictly follow during your deliberations.

1.     Do not let bias, prejudice, or sympathy play any part in your deliberations.

2.     In arriving at your answers, consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the Court, that is, what you have seen and heard in this courtroom, together with the law as given you by the Court. In your deliberations, you will not consider or discuss anything that is not represented by the evidence in this case.

3.     Since every answer that is required by the charge is important, no juror should state or consider that any required answer is not important.

4.     You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions, and do not discuss nor concern yourselves with the effect of your answers.

5.     You will not decide an issue by lot or drawing straws, or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that the jurors agree to abide by the result to be reached by adding together each juror's figures and dividing by the number of jurors to get an average. Do not do any trading on your answers; that is, one juror should not agree to answer a certain question one way if others will agree to answer another question another way.

6.      You may render your verdict upon the vote of ten or more members of the jury. The same ten or more of you must agree upon all for the answers made and to the entire verdict. You will not, therefore, enter into an agreement to be bound by a majority or any other vote of less than ten jurors. If the verdict and all the answers therein are reached by unanimous agreement, the presiding juror shall sign the verdict for the entire jury. If any juror disagrees as to any answer made by the verdict, those jurors who agree to all findings shall each sign the verdict.

These instructions are given to you because your conduct is subject to review the same as that of the witnesses, parties, attorney, and the judge. If is should be found that you have disregarded any of these instructions, it will be jury misconduct and it may require another trial by another jury; then all for our time will have been wasted.

The presiding juror or any other who observes a violation of the Court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

When words are used in this charge in a sense which varies from the meaning commonly understood, you are given proper legal definition, which you are bound to accept in place of any other meaning.

Answer "Yes" or "No" to all questions unless otherwise instructed. A "yes" answer must be based on a preponderance of evidence. If you do not find that preponderance of the evidence supports a "Yes" answer, then answer "No." The term "preponderance of the evidence" means the greater weight and degree of credible testimony or evidence introduced before you and admitted in this case.     Whenever a question requires other than a "Yes" or "No" answer, your answer must be based on a preponderance of the evidence.

**PROPOSED INSTRUCTIONS**

**WITNESSES**

A witness may be discredited or "impeached" by contradictory evidence or by evidence that the witness has at other times made statements that are inconsistent with the witness's present testimony. The earlier contradictory statements are admissible only to impeach the credibility of the witness and not to conclusively establish the truth of the earlier statements. If you believe any witness has been impeached and thus discredited, you are free to give the testimony of that witness such credibility, if any, as you may think it deserves.

## EVIDENCE

You may, in your determination of the facts of this case, consider both direct and circumstantial evidence. Direct evidence is the testimony of a witness who actually saw an event occur. Circumstantial evidence is proof of a chain of circumstances pointing to the occurrence of a fact or the existence of a fact. Direct evidence includes a witness's testimony as to facts within that person's own personal knowledge, matters that the witness saw and heard, and matters that came to the witness out of that person's own senses or observations. Circumstantial evidence, rather than or in addition to direct evidence, can be used to establish a fact if that fact may be fairly and reasonably inferred from all other facts and circumstances proved in the case. In order to establish a fact or conclusion by circumstantial evidence, the facts that were directly proven in the case must be such as to make the fact or conclusion sought to be shown by circumstantial evidence more reasonably probable to be true than alternative facts or conclusions. As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that the jury find the facts in accordance with a preponderance of all the evidence in the case, both direct and circumstantial.

## PRIMA FACIE CASE FOR DISCRIMINATION

To make out a prima facie case for discrimination the Plaintiff is required to show, by a preponderance of the evidence, that she:

(1)     is a member of a protected class;

(2)     who performed her job satisfactorily;

(3)     despite her performance she suffered an adverse action which affected the compensation, terms, conditions, or privileges of her employment;  and

(4)     members outside the protected class did not suffer the same adverse action.


Source of Instruction: *McDonnell Douglas Corp v Green*, 411 U.S. 792 (1973); *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 587 (5th Cir. 1998); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Ward v. Bechtel Corp.*, 102 F.3d 199, 202 (5th Cir.1997);  *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992 (5th Cir.1996) (en banc).

## DEFENDANT'S BURDEN TO ARTICULATE

## LEGITIMATE NONDISCRIMINATORY REASON

If the plaintiff makes out a prima facie case, an inference of discrimination arises and the defendant employer then bears the burden of articulating a legitimate, nondiscriminatory reason for the decision. The defendant's burden is merely to articulate, not prove, its reasons. The ultimate burden of persuading the trier of fact that the Defendants intentionally discriminated against the plaintiff remains at all times with the plaintiff.

Source of Instruction: *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Grimes v. Texas Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996), *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-57 n. 10 (1981), *Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1297 (5th Cir. 1994), *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)

## PLAINTIFF HAS BURDEN TO SHOW PRETEXT

Once the employer has articulated a legitimate, nondiscriminatory reason for the challenged action, the plaintiff, to prevail, must show that the stated reason was a pretext for discrimination and that the alleged basis of discrimination was a determinative factor in the actions of which she complains. If the Defendant has satisfied its burden tending to show a non-discriminatory reason for the challenged action, the plaintiff may introduce evidence to show that the Defendant's reasons are not the true reasons why the Defendant took adverse actions against the Plaintiff, that such reason is unworthy of belief and the true reason for the adverse action was discrimination or retaliation.

It is the Plaintiff's burden to persuade you, by a preponderance of the evidence, that the Defendants took the adverse actions against the Plaintiff because of her gender, race, or because the Plaintiff engaged in a protected activity. If you do not believe the Defendant's explanation for its actions, then you may infer, but need not infer, that the plaintiff has satisfied her burden of proof that the Defendant intentionally discriminated against her because of her gender, race, or because the Plaintiff engaged in a protected activity.

Source of Instruction: *Ontiveros v. Asarco, Inc.*, 83 F.3d 732, 734 (5th Cir. 1996), *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 994 (5th Cir. 1996)(en banc).

# CAUSATION

The Plaintiff must establish by a preponderance of the evidence that gender, race, or a retaliatory purpose was a determinative or "motivating" factor in the action taken by the Defendants. The Plaintiff need not establish that gender, race, or a retaliatory purpose was the sole factor motivating the Defendant. The Plaintiff demonstrates that gender, race, or a retaliatory purpose was a motivating factor if she shows that "but for" her gender, race, or her exercise of a protected activity, she would have been would not have been subjected to the adverse employment action.

Source of Instruction: *Merkel v. Scovill, Inc.*, 787 F.2d 174 (5th Cir. 1986), *Bohrer v. Hanes Corp.*, 715 F.2d 213 (5th Cir. 1983), cert. denied, 465 U.S. 1026 (1984).

## HOSTILE ENVIRONMENT HARASSMENT

"Hostile environment" sexual harassment involves no tangible job benefit or detriment. Sexual harassment occurs in this instance when an employer subjects an employee to sexual innuendos, remarks, and physical acts so offensive as to alter the conditions of the employee's employment and create an abusive work environment. In order to prove a hostile environment claim, a plaintiff must be able to show more than a mere utterance of an epithet which engenders offensive feelings in an employee, as this does not sufficiently affect conditions of employment.

Source of Instruction: Federal Employment Jury Instructions 1:70.30; *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65 (1986).

## PRIMA FACIE CASE OF CONSTRUCTIVE DISCHARGE

If you find that Plaintiff was subjected by Defendant to harassment on the basis of sex or was discriminated against because of her sex, you must consider whether such harassment or discrimination was so severe that Plaintiff was constructively discharged.

To prevail on this claim, Plaintiff must prove by a preponderance of the evidence that Defendants, instead of directly discharging Plaintiff, intentionally created an intolerable work atmosphere that forced Plaintiff to quit involuntarily. Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in Plaintiff's shoes would have felt compelled to resign. The conduct must express extreme insensitivity and be so egregious in nature as to alter the conditions of employment.

Source of Instruction: *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 65 (1986); *DeAngelis v. El Paso Municipal Police Officers Association*, 51 F.3d 591, 593 (5th Cir. 1995).

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In order to establish a prima facie case of intentional infliction of emotional distress the Plaintiff must prove:

(1)    the Defendant's actions were intentional or reckless;

(2)    the Defendant's actions were extreme and outrageous; and

(3)    these actions caused severe and emotional distress.

Source of Instruction:    *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993).

## MITIGATION OF DAMAGES

If you find that Plaintiff was injured as a natural consequence of conduct by the Defendants in violation of the Texas Commission on Human Rights Act, you must determine whether Plaintiff would thereafter have done something to lessen the harm that she suffered. If the Defendants convinces you that the Plaintiff could have reduced the harm done to her but failed to do so, the Plaintiff is entitled only to damages sufficient to compensate her for the injury that she would have suffered if she had taken appropriate action to reduce the harm done to her.

## RULE AGAINST DOUBLE RECOVERY

You should not award damages more than once for the same injury. For example, if a plaintiff were to prevail on two claims and establish damages for the same injury under both claims, you could not award her damages on both of those claims. The plaintiff is entitled to be made whole, but is not entitled to recover more than she lost. Of course, if different injuries are attributed to the separate claims, then you must compensate her fully for all of her injuries.

## DAMAGES

Although I instruct you on the issue of damages, this should not be interpreted in any way as an indication that I believe the Plaintiff should, or should not, prevail in this case.

## COMPENSATORY DAMAGES

If you find that the Defendant is liable to the Plaintiff, then you must determine an amount that is fair compensation for all of the Plaintiff's damages. The purpose of compensatory damages is to compensate the Plaintiff for the damage that the Plaintiff has suffered, if any, from the injuries she sustained as a result of the Defendants' acts or omissions. Compensatory damages are not allowed as a punishment and cannot be imposed or increased to penalize a Defendants.

If you find that Defendants engaged in intentional discrimination, you may award Plaintiff compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. (Federal Employment Jury Instructions 3:490)

## BACK PAY

If you find that the Defendants are liable to the Plaintiff for wrongful termination you may also award the Plaintiff back pay. In order to award back pay, you must consider the amount of pay the Plaintiff is entitled to for the period of time between the dates upon which the Plaintiff was terminated and the date of this trial. From the forgoing amount, the Defendants are entitled to certain set-offs if they prove the Plaintiff received additional benefits between the date of her termination and the date of this trial. If you find the Plaintiff has been employed during the relevant time period, you should also set-off that portion of the salary between the dates when first hired up to the time of trial.

## FRONT PAY

If you find in favor of the plaintiff on the issue of discrimination, you are also to consider the issue of front pay. Front pay is to compensate plaintiff for damages she proves she is going to suffer as the result of income she will lose in the future because of defendant's alleged discrimination against her. You may award front pay damages for future monetary losses if you find that these were caused by the defendant's illegal acts.

In determining whether to award damages for loss of future earnings, you may consider several factors: (i) whether plaintiff has already found, or should have already found, employment financially comparable to her employment by defendant, whether in the same or in a different field; (ii) if not, the length of time, based upon the plaintiff's age and circumstances, that it will take her to find comparable alternative employment; (iii) the potential and possibility for plaintiff's promotion and advancement within her current professional field, the prospect of plaintiff returning to her previous field of employment, and the amount she would reasonably be expected to earn if she did so.

To summarize, it is your decision whether to award plaintiff any front pay, based on the evidence presented and the factors I identified for you a moment ago. You may award front pay only if you find, by a preponderance of the evidence, that plaintiff will suffer, as a result of the employer's allegedly discriminatory conduct, monetary losses going into the future, and only for the period, that you find that it will take for her to be restored to substantially the position she would have been in financially had she not been discharged.

## DEFENDANTS' PROPOSED JURY QUESTIONS

**Question No. 1**

Did Russell Ash's conduct of inviting Guillermina Montelongo out for a beer on three occasions constitute sexual harassment?

"Sexual harassment" occurs if:

1.  Guillermina Montelongo was subjected to sexual advances, requests for sexual favors, and/or other conduct of a sexual nature that was unwelcome and undesirable or offensive to Guillermina Montelongo;

2.  The harassment complained of altered a term, condition, or privilege of employment; and

3.  The conduct was committed by a supervisor who had authority over hiring, advancement, dismissals, discipline, or other employment decisions affecting Guillermina Montelongo.

Harassment alters a term, condition, or privilege of employment when a reasonable person would find that the harassment created an abusive working environment. In determining whether an abusive working environment existed, consider the following: the frequency of the conduct; its severity; whether it was physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Answer "Yes" or "No".

ANSWER_____

If your answer to Question No. 1 is "Yes", then answer the following question. Otherwise, do not answer the following question.

**Question No. 2**

Is Titan Tires of Texas legally excused from responsibility for the conduct of Russell Ash found in Question No. 1?

Titan Tires of Texas is legally excused if:

1.      Titan Tires of Texas exercised reasonable care to prevent and correct promptly any sexual harassment behavior; and

2.      Titan Tires of Texas unreasonably failed to take advantage of any preventative or corrective opportunities by her employer or to avoid harm otherwise.

Answer "Yes" or "No".

ANSWER_____

**Question No. 3**

Was Guillermina Montelongo constructively discharged from her employment with the Titan Tires of Texas?

An employee is considered to have been discharged when an employer makes conditions so intolerable that a reasonable person in the employee's position would have felt compelled to resign.

Answer "Yes" or "No".


ANSWER_____

**Question No. 4**

Did Russell Ash intentionally inflict severe emotional distress on Guillermina Montelongo?

Answer "Yes" or "No."

Answer:_____

Source of question: Texas Pattern Jury Charge 6.5.

**Question No. 5**

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Guillermina Montelongo for her damages, if any, resulting from Titan Tires of Texas' conduct?

Consider the following elements listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include any interest on any amount of damages you have found.

Answer in dollars and cents, if any, for the following:

a.    Back pay.

"Back pay" is that amount of wages and employment benefits that Guillermina Montelongo would have earned if she had not been subjected to her employer's unlawful conduct less any wages, unemployment compensation benefits or workers' compensation benefits she received in the interim.

"Employment benefits" include sick-leave, vacation pay, stock options, pension fund benefits, housing or transportation subsidies, bonuses, monetary losses incurred as a result of the losses of health, life, dental, or similar insurance coverage.

ANSWER: _____

b.    Compensatory damages.

"Compensatory damages" include future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages. Do not include back pay or interest in calculating compensatory damages, if any.

ANSWER: _____

After you have retired to consider your verdict, no one has any authority to communicate with you except the bailiff of the Court. You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all of the questions which you are required to answer under the instructions of the judge, and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will advise the bailiff at the door of the jury room that you have reached a verdict, and then you will return into court with your verdict.

_____

JUDGE PRESIDING

## CERTIFICATE

We, the jury, have answered the above and foregoing questions as herein indicted, and herewith return same into court as our verdict.

(To be signed by the presiding juror if unanimous.)

_____

PRESIDING JUROR

(To be signed by those rendering the verdict if not unanimous.)

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

Signed on October 15, 2003

Respectfully submitted,

WILLETTE & GUERRA, L.L.P.
International Plaza, Ste. 460
3505 Boca Chica Blvd.
Brownsville, Texas 78521
Telephone: (956) 541-1846
Facsimile: (956) 541-1893

By: _____
    Eileen  M.  Leeds
    State Bar No. 00791093

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| GUILLERMINA MONTELONGO | § | |
| | § | |
| VS. | § | CIVIL ACTION NO.   B-02-176 |
| | § | (JURY REQUESTED) |
| TITAN TIRE CORPORATION OF | § | |
| TEXAS, and RUSSELL ASH | § | |

## DEFENDANTS' PROPOSED VOIR DIRE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Defendants, Titan Tire of Texas and Russell Ash and submit this their

Proposed Voir Dire and requests that the following questions be asked of the jury panel in the

same or substantially similar wording:

1. Have you or any members of your family or close friends ever had any dealings
   with the Titan Tires of Texas , or have you or any relatives or close friends ever
   worked for Titan Tires of Texas?

2. Does anyone here have any reason to disbelieve or have hard feeling against
   TitanTires of Texas?

3. Have you or members of your family or close friends ever sued Titan Tires of
   Texas or any of its employees or any employer or former employer of yours? (If
   yes, give details).

4. Does anyone here know the Plaintiff, Guillermina Montelongo?

5. Does anyone here know the Defendant, Russell Ash?

6. Have you, your family members or close friends ever been a plaintiff (a person
   bringing a lawsuit) in a lawsuit for any reason? (If yes, give details).

can be called upon to pay damages for those circumstances.

17.   Will you have any difficulty applying your common sense in evaluating the testimony and credibility of witnesses?

18.   Since plaintiff gets to present her entire case before we can call a single witness, can you wait until both sides have had a chance to present their cases before you begin deciding?

19.   Do you agree that a party has a right to defend itself and assert innocence?

20.   Do you believe the defendant corporation is entitled to the same fair consideration as an individual person?

22.   Has anyone formed or expressed an opinion already that a plaintiff generally or this Plaintiff should recover from the Defendant?

23.   Can you return a verdict for the Defendant if the evidence does not support the Plaintiff's case?

24.   Have any of you, your family members, or close friends ever had a complaint against Titan Tires of Texas or any of its employees or your employer or former employer?

25.   Have any of you, your family members, or close friends ever resigned because your supervisor created a hostile environment?

26.   Do you believe that managers or supervisors have different management styles and some management styles may be more aggressive than others?

27.   Do you believe that if a manager has an aggressive management style there is no discrimination if the aggressive management style is used toward all employees?

28.   Is there anything else about your situation that has not been raised yet today that would affect or prevent your ability to act as a juror in this case?

7.    (Identify Plaintiff's witnesses and attorneys, including Plaintiff.)Do you know, or have you, your family members, or close friends, ever had any dealings whatsoever with these named individuals?

8.    (Identify Defendant's witnesses and attorneys, including Defendant) Do any of you know or have you had any dealing whatsoever with any of these named individuals? (If yes, give details).

9.    What do you understand sexual harassment to mean?

10.    Have you or any member of your family even been involved in an incident where sexual harassment occurred or was claimed to have occurred?

11.    What was your reaction to that situation?

12.    Do you think that asking someone out to have a drink after work or out on a date is sexual harassment?

13.    Does anyone here disagree with the rule that an unpleasant work environment which has no relationship to gender in not covered by the law prohibiting sexual harassment?

14.    Does anyone here disagree with the rule that adoption of an express policy against harassment by the employer can shield an employer from liability if no complaint by plaintiff, unless employer actually knew about the problem anyway?

15.    Does anyone here quarrel with the rule that an employer is not automatically liable for harassment by one of its employees; it needs to have been involved by knowledge or by allowing conduct?

16.    Does anyone here agree that before an employer can be liable under Title VII that they must be given a fair chance to correct problems they learn about before they can be called upon to pay damages for those circumstances.

17.  Will you have any difficulty applying your common sense in evaluating the testimony and credibility of witnesses?

18.  Since plaintiff gets to present her entire case before we can call a single witness, can you wait until both sides have had a chance to present their cases before you begin deciding?

19.  Do you agree that a party has a right to defend itself and assert innocence?

20.  Do you believe the defendant corporation is entitled to the same fair consideration as an individual person?

22.  Has anyone formed or expressed an opinion already that a plaintiff generally or this Plaintiff should recover from the Defendant?

23.  Can you return a verdict for the Defendant if the evidence does not support the Plaintiff's case?

24.  Have any of you, your family members, or close friends ever had a complaint against Titan Tires of Texas or any of its employees or your employer or former employer?

25.  Have any of you, your family members, or close friends ever resigned because your supervisor created a hostile environment?

26.  Do you believe that managers or supervisors have different management styles and some management styles may be more aggressive than others?

27.  Do you believe that if a manager has an aggressive management style there is no discrimination if the aggressive management style is used toward all employees?

28.  Is there anything else about your situation that has not been raised yet today that would affect or prevent your ability to act as a juror in this case?